UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

\* \* \*

| | |
|---|---|
| EDWARD MOTLEY, | Case No.: 2:08-cv-01423-RLH-VPC |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#63) |
| J. SMITH, *et al.*, | |
| Defendants. | |

Before the Court is Defendants Beasley, Callison, Chapman, Craddock, Kemp, McGrath, McGuire, Peddicord, Rausch, Smith, Wagner, and Wright's **Motion for Summary Judgment** (#63, filed Mar. 11, 2011). The Court has also considered Plaintiff Edward Motley's Opposition (#71, filed May 18, 2011), and Defendants' Reply (#73, filed June 3, 2011).

**BACKGROUND**

Plaintiff Edward Motley is a state prisoner at the Salinas Valley State Prison in Soledad, California. Defendants are prison officials who were employed with the California Department of Corrections and Rehabilitation ("CDCR") at the time of the alleged events. Motley alleges that Defendants violated several of his constitutional rights in various ways, including preventing him from attending a disciplinary hearing, maliciously assaulting him, refusing to give

1

him medical care, etc.  Motley filed suit against Defendants under 42 U.S.C. § 1983 asserting several constitutional claims.  Pursuant to the Prisoner Litigation Reform Act, 28 U.S.C. § 1915A(a), the Court screened Motley's complaint and allowed the following claims to proceed: (1) Fourteenth Amendment due process, (2) First Amendment retaliation, (3) First Amendment access to the courts, (4) Eighth Amendment excessive force, and (5) Eighth Amendment deliberate indifference.  Defendants have now filed a motion to dismiss/motion for summary judgment, asking the Court to dismiss some claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and others under Rule 56.  For the reason discussed below, the Court grants Defendants' motion.

**DISCUSSION**

**I.   Defendants' Motion to Dismiss**

    **A.   Legal Standard**

A court may dismiss a plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted."  However, where a motion brought under Rule 12(b)(6) is filed after a responsive pleading is filed (*i.e.*, an answer to a complaint) the motion is untimely.  Fed. R. Civ. P. 12(b); *see Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1341 (9th Cir. 1976).  In addition, an untimely filed Rule 12(b)(6) motion will be treated as a motion for judgment on the pleadings under Rule 12(c).  *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (2004).  However, the net effect is inconsequential because a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980).  Thus, a judgment on the pleadings is appropriate when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Therefore, to survive a Rule 12(c) motion, a complaint must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Finally, "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies

1  under the [Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a)], a district court 'may
2  look beyond the pleadings and decide disputed issues of fact.'" *Morton v. Hall*, 599 F.3d 942, 945
3  (9th Cir. 2010) (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003)).
4          In this case, Defendants filed their Rule 12(b)(6) motion after they filed their
5  answer to Motley's complaint. Therefore, the Court finds the motion untimely and will treat it as a
6  motion for judgment on the pleadings under Rule 12(c). *Elvin*, 375 F.3d at 955. In addition,
7  because Defendants' motion is partly based on Plaintiff's failure to exhaust under the PLRA, the
8  Court will look beyond the pleadings to analyze this motion. *Morton*, 599 F.3d at 945.
9      **B.**    **Analysis**
10         Defendants argue that the Court should dismiss Motley's First and Eighth
11 Amendment claims against Defendants Callison, Craddock, Peddicord, Rausch, Smith, and
12 Wagner because Motley did not exhaust his administrative remedies for the claims against these
13 Defendants. The PLRA requires that a prisoner exhaust all available administrative remedies
14 before filing a civil action. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to
15 "all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S.
16 516, 520 (2002). In order for a prisoner to exhaust administrative remedies he or she must comply
17 with the regulations that govern the prison's administrative appeals system. *Jones v. Bock*, 549
18 U.S. 199, 218 (2007).
19         Under California law, an inmate or parolee may "appeal any policy, decision,
20 action, condition, or omission by the [CDCR] or its staff that the inmate or parolee can
21 demonstrate as having a material adverse effect upon his or her health, safety, or welfare."
22 15 CCR § 3084.1(a). To initiate an appeal, the inmate must file a CDCR Form 602 with an
23 appeals coordinator within 30 calendar days of the event that lead to the filing of the appeal. 15
24 CCR §§ 3084.2(a), (c); 3084.8(b)(1). The appeals coordinator will then conduct an initial
25 screening of the appeal, which can result in the acceptance, rejection, or cancellation of the appeal.
26 15 CCR § 3084.5(b). If the appeals coordinator rejects or cancels the appeal, the inmate or parolee

must be notified of the reasons for the rejection or cancellation. 15 CCR § 3084.5(b)(3). However, "a cancellation or rejection decision does not exhaust administrative remedies." 15 CCR § 3084.1(b). In general, to exhaust administrative remedies the inmate or parolee must complete three levels of appeal. 15 CCR 3084.1(b). An appeal may bypass the first two levels of appeal under certain circumstances, but all appeals are subject to third level review. 15 CCR §§ 3084.7(a); 3084.1(b). Once the third level of review is complete, the inmate has exhausted his or her administrative remedies. 15 CCR 3084.1(b).

    **1.  Motley's Excessive Force Claim Against McGuire**

    The Court finds that Motley has failed to exhaust his administrative remedies for his excessive force claim against McGuire. Motley alleges that McGuire was escorting Motley to his cell when McGuire began to physically assault him by pushing him up against the wall and slamming his hands in the cell door. Although Motley properly initiated his appeal against McGuire by filing a Form 602 with the appeals coordinator, he failed to exhaust the appeal because he only completed the first and second levels of review. Even though Motley's appeal was partially granted on the second level of review, he was still required to appeal to the third level of review in order to exhaust his administrative remedies. 15 CCR §§ 3084.7(a); 3084.1(b). Therefore, even viewing the facts in the light most favorable to Motley, the Court grants Defendants' motion with respect to Motley's excessive force claim against McGuire.

    **2.  Motley's Deliberate Indifference Claim Against Callison and Craddock**

    The Court finds that Motley has failed to exhaust his administrative remedies for his claims against Callison and Craddock. Motley alleges Defendants Callison and Craddock were deliberately indifferent to his medical needs when they failed to treat the injuries he allegedly sustained from Defendant McGuire's purported assault. Motley claims he included this allegation against Callison and Craddock during the administrative proceedings against McGuire at some point after the first level of review. However, the administrative record Motley provided to the Court does not make any mention of either Callison or Craddock, or of their alleged misconduct.

1    In addition, California law states that administrative remedies are not exhausted as to new issues or
2    persons that were not raised in the original Form 602 and Motley did not mention Callison or
3    Craddock in the Form 602 that he filed against McGuire. 15 CCR 3084.1(b). Therefore, Motley's
4    claim does not contain sufficient factual allegations to state a valid claim for relief. Accordingly,
5    the Court grants Defendants' motion with respect to Motleys claims against Callison and
6    Craddock.

        **3.**     **Motley's Access to the Courts Claim Against Peddicord, Rausch, and Wagner**

9    An inmate has a constitutional right to access to the courts and may recover for
10   denial of that right in a civil rights lawsuit if he can demonstrate that an actual injury occurred as a
11   result of the denial. *Lewis v. Casey*, 518 U.S. 343, 351–52 (1996). Motley alleges that Peddicord,
12   Rausch, and Wagner violated his right of access to the courts by confiscating his legal materials
13   and intercepting his legal mail, among other things. However, Motley concedes in his opposition
14   (#71) that he did not suffer any actual injury as a result of Peddicord, Rausch, and Wagner's
15   alleged conduct. Therefore, the Court finds that Motley has failed to state a valid claim for relief
16   for his access to the courts claim against Peddicord, Rausch, and Wagner. Accordingly, the Court
17   grants Defendants' motion with respect to this claim.

18   **II.**    **Defendants' Motion for Summary Judgment**

19   The only remaining claims are Motley's Due Process claim against Defendants
20   Smith, Peddicord, Beasley, Kemp, Wright, Chapman, and McGrath, and his Retaliation claim
21   against Defendants Smith, Wright, and McGuire.

22       **A.**    **Legal Standard**

23   The purpose of summary judgment is to avoid unnecessary trials when there is no
24   dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d
25   1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings, the discovery
26   and disclosure materials on file, and any affidavits show there is no genuine dispute as to any

AO 72
(Rev. 8/82)

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**B.     Analysis**

   **1.     Fourteenth Amendment Due Process**

Motley's only remaining due process claims are against Defendants Smith, Peddicord, Beasley, Kemp, Wright, Chapman, and McGrath. Motley makes various factual allegations in support of his due process claims; the Court will analyze each in turn.

   **a.     Filing a False Rules Violation Report**

To prevail on a due process claim, the plaintiff must show that he had a protected liberty interest and that he was deprived of that interest without due process of law. *Erickson v. United State ex rel. Dep't of Health and Human Servs.*, 67 F.3d 858, 863 (9th Cir. 1995). In the context of prison disciplinary proceedings, due process requires that the prisoner receive written notice of the charges against him or her at least 24 hours before the disciplinary hearing. *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). In addition, the prisoner has a due process right to attend the disciplinary hearing and present evidence in his or her defense. *Zimmerlee v. Kenney*, 831 F.2d 183, 186 (9th Cir. 1987). Finally, due process requires a written statement by the fact finders stating the evidence relied upon and the reasons for the disciplinary action they take. *Id*.

Motley alleges that Smith violated his Due Process rights by filing a false Rules Violation Report ("RVR") against him.[1] Specifically, in July 2005, Smith issued an RVR against Motley charging him with obstructing a peace officer (Motley allegedly refused to accept a new cell mate) and a hearing was scheduled on the matter for August 3, 2005 (the "Smith RVR"). However, "[b]eing falsely accused of a rule violation does not violate due process so long as Plaintiff receives the limited procedural protections described in *Wolff*," *Walker v. Vazquez*, No. 1:09-cv-00931-YNP-PC, 2009 U.S. Dist. LEXIS 122520, at *24–25 (E.D. Cal. December 16, 2009), and Defendants evidence demonstrates that Motley did receive those procedural protections for the Smith RVR. He was given a copy of the RVR four days in advance of the disciplinary

---

[1] An RVR is a form that is filed by a prison official when a prisoner's "misconduct is believed to be a violation of law or is not minor in nature . . . ." 15 CCR § 3312(a)(3).

7

1  hearing and it clearly describes the charges against him.  As discussed below, he was also given

2  the opportunity to attend the disciplinary hearing, although Defendants' evidence demonstrates

3  that he refused to do so.  Finally, he was given a written statement by the presiding officer at the

4  hearing, Defendant Peddicord, which contains an explanation of the evidence relied upon and the

5  reasons for finding him guilty.

6        The only evidence Motley presents in support of this claim is a declaration from

7  Inmate Tommy Brown.  However, Brown's declaration is so vague and ambiguous that the Court

8  finds it insufficient to demonstrate that a reasonable fact finder could find for Motley, to say

9  nothing of the fact that it contains inadmissible hearsay evidence.  At the very least, Brown's

10  declaration would represent "[t]he mere existence of a scintilla of evidence" in support of Motley's

11  claims,  which is insufficient to create a material issue of fact.  *Anderson*, 477 U.S. at 252.

12  Therefore, the Court finds that summary judgment is proper as to Motley's due process claim

13  against Smith for allegedly filing a false RVR.

14        **b.**      **Motley Denied of Staff Assistant and Investigative Employee**

15        Motley alleges that Smith violated his due process rights by not assigning a staff

16  assistant and an investigative employee to assist him in his defense against the Smith RVR.

17  Specifically, Motley alleges that when Smith issued the Smith RVR, Motley requested to have a

18  staff assistant and an investigative employee assist him in his defense and Smith refused his

19  request.  However, California law does not require a staff assistant and investigative employee to

20  assist a prisoner.  15 CCR § 3315(d)(1)(A), (d)(2)(A).  Indeed, a prison official must only assign a

21  staff assistant and investigative employee under certain circumstances, *id*., and Motley has

22  provided no evidence that his circumstances qualified.  Accordingly, the Court grants Defendants

23  motion for summary judgment as to Motley's due process claim against Smith for not assigning a

24  staff assistant and investigative employee to assist Motley in his defense of the Smith RVR.

25  ///

26  ///

AO 72
(Rev. 8/82)

### c. Preventing Motley from Participating in Hearing

Prisoners have a due process right to be present at a disciplinary hearing. *Wolff*, 418 U.S. at 564. However, a prisoner can waive his or her right to be present at a disciplinary hearing if the prisoner does so voluntarily, intelligently, and knowingly, "with full awareness of the legal consequences" of such waiver. *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185–87 (1972).

Motley alleges that Smith violated his due process rights by refusing to allow Motley to participate in a disciplinary hearing for the Smith RVR. Motley alleges that on the day of the hearing Defendants Smith and Kemp came to his cell to escort him to the hearing. He alleges that Smith forcefully took several documents Motley had prepared for the hearing and read through them. Then Smith apparently noticed a piece of thread tied onto Motley's wrist and asked Motley to remove it. Motley alleges that when he refused to remove the thread, Smith told him that by refusing to do so Motley was refusing to attend the hearing. Smith allegedly left Motley's cell and the hearing was held without him. Motley was found guilty of obstructing a peace officer.

Defendants argue that the undisputed evidence demonstrates that Motley waived his right to attend his disciplinary hearing. The Court agrees. California law provides that an "inmate shall normally be present at a disciplinary hearing." 15 CCR § 3320(g). However, the inmate does not need to be present at a disciplinary hearing if

> [t]he inmate has waived his right to be present in writing, or in the case of a refusal to sign a waiver, the refusal was witnessed by a custody officer, documented on a CDC Form 128-B (Rev. 4/74), and attached to the CDC Form 115 for review by the Senior Hearing Officer at the disciplinary hearing and by the Chief Disciplinary Officer following adjudication of the rules violation report.

15 CCR § 3330(g)(3). In support of their argument, Defendants provide a Form 128-B, which states that Motley refused to attend the August 3 hearing. In addition, because Motley allegedly refused to sign a waiver, the form further contains the signature of two correctional officers, officers Holmes and Kemp, who witnessed Motley's refusal. The Defendants also provide a Form

115 in which Defendant Peddicord, the officer presiding at the disciplinary hearing, notes that Motley refused to attend the hearing as evidenced by the Form 128-B provided to him by Holmes and Kemp. Thus, the Defendants complied with the process established under California law to handle a prisoners refusal to attend a disciplinary hearing. The Court therefore finds that the Defendants' evidence shows that Motley voluntarily waived his right to attend the disciplinary hearing.

The only evidence Motley presents in support of this claim is another declaration from Inmate Tommy Brown. However, this declaration possesses the same unfavorable features found in his other declaration discussed above. Therefore, it is insufficient to create a genuine dispute of material fact with respect to this claim. Accordingly, the Court grants Defendants' motion for summary judgment as to Motley's Due Process claim against Defendant Smith.

### d.     Failure to Deliver Request for Interview

Motley alleges Defendant Beasley violated his Due Process rights by failing to deliver a request for interview to Defendant Peddicord. Specifically, after Defendant Smith allegedly refused to escort Motley to the RVR hearing, Motley asked Beasley to deliver a request for an interview to Peddicord, the officer presiding at the RVR hearing. Motley claims Beasley never delivered the request. However, Motley admits that he does not have any evidence that Beasley failed to deliver the request to Peddicord. As such, Motley has failed to carry his burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Therefore, the Court grants Defendants' motion for summary judgment as to Motley's Due Process claim against Beasley for failure to deliver the request to Peddicord.

### e.     Holding RVR Hearing Despite Motley's Absence

Motley alleges Defendant Peddicord violated his Due Process rights by holding the above-referenced RVR hearing despite Motley's absence. Specifically, Motley alleges that the request he asked Beasley to deliver to Peddicord should have put Peddicord on notice of Motley's desire to attend the hearing. However, Motley has provided no evidence that Peddicord was aware

AO 72
(Rev. 8/82)

of Motley's desire to attend the hearing.  To the contrary, as discussed above, Defendants evidence shows that Peddicord was notified by officers Holmes and Kemp that Motley refused to attend the hearing.  Accordingly, Motley has failed to provide sufficient evidence to create a genuine issue of material fact that Peddicord deliberately proceeded with the RVR hearing despite notice that Motley wanted to attend.  Therefore, the Court grants summary judgment as to Motley's Due Process claim against Peddicord for holding RVR hearings despite Motley's absence.

### f. Placing Motley in Behavioral Management Unit

To prevail on a due process claim, the plaintiff must show that he had a protected liberty interest and was deprived of that interest without due process of law. *Erickson v. United State ex rel. Dep't of Health and Human Servs.*, 67 F.3d 858, 863 (9th Cir. 1995).  In the context of prison administrative placement, due process requires (1) an informal nonadversary hearing within a reasonable time after placement, (2) notice of the reasons for the placement, (3) an opportunity to present his views in the hearing, and (4) some evidence to support the administration's decision. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100–01, 05 (9th Cir. 1986).

Motley alleges that Wright and Chapman violated his due process rights by placing him in the prison's Behavioral Management Unit ("BMU").[2]  However, Defendants' evidence demonstrates that Motley was afforded all of the procedural safeguards due process requires. California law establishes three reasons for placing a prisoner into BMU, and in each case in which Wright and Chapman placed Motley in BMU at least one of these reasons was present.  In addition, Defendants' undisputed evidence demonstrates that Motley was afforded a hearing, informed of the reasons for his placement in the BMU, and given an opportunity to present his views.  Also, the undisputed evidence shows that Motley's prison record alone (*i.e.*, being found

---

[2] The prison's "Behavior Management Unit is alternate general population housing and programming which is designed to reduce inmate's continuing involvement in disruptive behavior, violence, or noncompliance with CDCR rules and regulations, allowing non-disruptive inmates in the general population the opportunity to program without continual interruption due to the behavior of a smaller, more disruptive segment of the inmate population."  15 CCR § 3000.

1   guilty of several serious RVR's) is ample evidence to support the prison's decision to place him in
2   the BMU.
3       Motley further alleges that McGrath is liable for his being placed in the BMU
4   because McGrath was the one who ran the BMU program and authorized the rules and policies of
5   the program. Specifically, Motley alleges that the BMU program is not in accordance with the law
6   and that because McGrath runs the program he should be held liable for it. However, the BMU
7   program was adopted pursuant to California Penal Code § 5058, which allows the director of
8   corrections to prescribe reasonable rules and regulations for the administration of state prisons,
9   Cal. Pen. Code § 5058(a), and there is no evidence before the Court which demonstrates that the
10  program is unreasonable, or unconstitutional for that matter. In addition, even assuming that the
11  BMU program is unconstitutional, Motley fails to allege how the program's rules and policies
12  violated his due process rights. Indeed, as stated above, throughout all of his interactions with the
13  BMU program he has received the proper due process protections. Therefore, the Court grants
14  Defendants motion for summary judgment as to Motley's due process claim against Wright,
15  Chapman, and McGrath.

16       **2.    First Amendment Retaliation**

17       A prisoner must prove the following five elements to prevail on his or her First
18  Amendment retaliation claim: (1) an assertion that a state actor took some adverse action against
19  an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the
20  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a
21  legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). In
22  addition, a plaintiff must "show that the protected conduct was a 'substantial' or 'motivating'
23  factor in the defendant's decision. At that point, the burden shifts to the defendant to establish that
24  it would have reached the same decision even in the absence of the protected conduct." *Soranno's*
25  *Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).
26

AO 72
(Rev. 8/82)

1        Motley's only remaining claims are for First Amendment retaliation against
2   Defendants Smith, Wright, and McGuire.  Motley alleges that Smith sought to have funds
3   withdrawn from Motley's prison account in retaliation for the staff complaints he filed against
4   Smith.  However, Motley also admits the funds were never actually withdrawn.  According to
5   Motley, it was the attempt to have the funds withdrawn that was retaliatory.  The Court disagrees.
6   Even assuming Smith did not have a legitimate reason to have the funds withdrawn, because the
7   funds were never actually withdrawn Motley could not have suffered any adverse action.
8   Accordingly, Motley's claim against Smith fails and the Court grants Defendants' motion for
9   summary judgment with respect to it.
10       Motley alleges that Wright retaliated against him for filing grievances by arbitrarily
11  extending his term in the BMU.  However, Defendants' evidence shows that Wright would have
12  extended Motley's term in the BMU regardless of whether Motley filed grievances against him.
13  Motley did not complete or even participate in the BMU program, which is a requirement to
14  graduate from the program.  In addition, as discussed above, Defendants' evidence demonstrates
15  that Motley's placement and retention in the BMU program served a legitimate correctional goal
16  given the frequency of his disruptive behavior in prison.  Accordingly, the Court grants
17  Defendants' motion as to this claim as well.
18       Finally, Motley alleges that McGuire issued a false RVR against Motley in
19  retaliation for his filing a grievance for excessive force (see Section (I)(B)(1) of this Order).
20  However, Defendants' evidence demonstrates that Motley was resisting McGuire when McGuire
21  allegedly used excessive force against him.  Accordingly, McGuire's filing an RVR against Motley
22  served a legitimate correctional goal to discourage prisoner misconduct.  Therefore, the Court
23  grants Defendants' motion as to all of Motley's retaliation claims.
24  ///
25  ///
26  ///

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#65) is GRANTED.

The Clerk of Court is instructed to close the case.

Dated: June 27, 2011

_____
ROGER L. HUNT
United States District Judge